IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA GEAR CORPORATION, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 02 cv 4359 |
| | ) | |
| ACSA STEEL FORGINGS, S.p.A., | ) | |
| Defendant | ) | TRIAL BY JURY DEMANDED |

**MEMORANDUM IN SUPPORT OF THE
MOTION TO DISMISS OF DEFENDANT**

I.  FACTS

This case is presently before the Court upon the motion to dismiss under Federal Rule 13(a) filed on behalf of Defendant, ACSA Steel Forgings, S.p.A. ("ACSA"). The claims asserted by Plaintiff's complaint constitute counterclaims which Plaintiff should have asserted in the action earlier filed by ACSA in the U.S. District Court for the Western District of Pennsylvania. The complaint filed herein by Pennsylvania Gear Corporation ("PennGear") alleges causes of action arising out of the contractual relationship between ACSA and PennGear. ACSA had filed an earlier action against PennGear which also arose from this contractual relationship. Since PennGear's claims fall within the definition of a Rule 13 compulsory counterclaim with regards to ACSA's lawsuit, PennGear's complaint must be dismissed.

A.  BACKGROUND

ACSA is a corporation in the business of manufacturing steel forgings to be used in the manufacturing industry.  PennGear, a corporation which manufactures gears and related goods, offered to purchase from ACSA various forgings to be used in its manufacturing process and to pay certain shipping expenses and warehouse costs for the same.  ACSA accepted these offers, and manufactured the forgings ordered by PennGear.  See *ACSA Complaint, ¶¶3-8;*[1] *PennGear Complaint, ¶¶4-6*.  As part of this manufacturing process, and in order to supply the forgings to PennGear under the agreement, ACSA also created specialized molds which are used to cut and form the forgings.  PennGear was charged some costs relating to the fabrication of the molds.  See *ACSA Complaint, exhibits*.  The parties' contractual relationship ended when PennGear failed and refused to pay ACSA.  *ACSA Complaint, ¶¶8-11; PennGear Complaint, ¶10*.

As a result of PennGear's failure and refusal to pay for the goods it received and accepted, ACSA commenced a lawsuit on August 16, 2001, in the United States District Court for the Western District of Pennsylvania, alleging a cause of action for breach of contract.  Subsequently, on or about June 2, 2002, approximately ten (10) months after the commencement of ACSA's Western District action, PennGear filed its lawsuit with the Court of Common Pleas of Bucks County.  ACSA then timely removed that action to this Honorable Court.

---

[1] A copy of ACSA's complaint is attached to the motion to dismiss.

2.

PennGear's action arises under the same contractual relationship which forms the basis for ACSA's earlier filed action. ACSA's suit alleges that PennGear breached the agreement by failing to pay for the forgings manufactured by ACSA. PennGear's lawsuit alleges damages under that same contractual relationship. PennGear's causes of action are based upon the contested allegation that ACSA wrongfully retained the manufacturing molds and used them to manufacture goods for other customers. ACSA denies all liability to PennGear.

ACSA has filed a motion to dismiss the complaint under Rule 13(a) on the ground that the claims made by PennGear in this action constitute compulsory counterclaims, which should have been filed by PennGear in response to ACSA's Western District action.

This memorandum of law is respectfully submitted in support of ACSA's motion.

II.     DISCUSSION

In the interest of judicial economy and fairness, Federal Rule of Civil Procedure 13(a) requires a defendant to assert all compulsory counterclaims it has against the plaintiff and thereby bars the defendant's initiation of a second, separate suit arising from the transaction or occurrence which forms the basis of the plaintiff's lawsuit. Rule 13 is "particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." Southern Construction Co. v. Pickard, 83 S. Ct. 108, 110 (1962). As such, the rule is designed to achieve the resolution, in a

single lawsuit, of all disputes arising out of common matters. <u>Zelenkofske Axelrod Consulting, L.L.C. v. Paul Stevenson and Stephen Messinger</u>, 1999 U.S. Dist. LEXIS 12137 (1999). Specifically, Rule 13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

F.R.C.P.13(a).

"The policy of Rule 13 is to flush out all possible counterclaims early in the litigation; in other words 'to prevent multiplicity of actions and to achieve a just resolution in a single lawsuit of all disputes arising out of common matters.'" <u>Cyclops Corp. v. Fishbach and Moore, Inc.</u>, 71 F.R.D. 616, 619 (W.D. Pa. 1976). To serve this purpose, the courts give a liberal interpretation to a Rule 13 "transaction or occurrence" for purposes of determining whether a claim constitutes a compulsory counterclaim. <u>Great Lakes Rubber Corporation v. Cooper</u>, 286 F.2d 631, 634 (3rd Cir. 1961); <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.</u>, 292 F.3d 384, 389 (3rd Cir. 2002) (the required degree of relatedness between the claims at issue has been viewed liberally). For instance, the Supreme Court, in <u>Moore v. New York Cotton Exchange</u>, 270 U.S. 593, 46 S.Ct. 367 (1926), broadly defined "transaction" under the predecessor to Rule 13, as follows:

4.

> 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship... That [the facts in the two claims] are not precisely identical, or that the counterclaim embraces additional allegations... does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are in all particulars, the same as those constituting the defendant's counterclaim.

The Third Circuit Court of Appeals adheres to the general rule that a counterclaim is compulsory if it bears a logical relationship to an opposing party's claim, such that separate trials on each party's claim would involve substantial duplication of effort. Claims bear a logical relationship to one another if they involve (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties. Great Lakes, 286 F.2d at 634. To "qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim." Transamerica Occidental Life Ins. Co., 292 F.3d at 389.

In Zelenkofske, this Court applied the Great Lakes test and ruled that plaintiff's claims constituted compulsory counterclaims and, therefore, the court transferred the action to the Eastern District of Virginia. Zelenkofske involved a contractual relationship whereby plaintiff agreed to sell the assets of its company to defendants and simultaneously to enter into employment agreements with defendants, which agreements contained covenants not to

compete. Shortly thereafter, plaintiff sought to terminate defendants' employment. Defendants filed a complaint in the Eastern District of Virginia alleging breach of contract, wrongful discharge, fraudulent inducement and a declaration that the covenants not to compete were void. Subsequently, plaintiff filed a complaint in the Eastern District of Pennsylvania alleging breach of covenants not to compete and conversion. The defendants filed a motion to dismiss or, alternatively, to transfer the case to the Eastern District of Virginia. This Court found that the plaintiff's claims were sufficiently similar to the legal and factual issues asserted by the defendants' earlier filed Virginia action, as to constitute compulsory counterclaims. Under the first-filed rule, this court transferred the action for consolidation with defendants' action in the Virginia court.

Applying the Great Lakes test to the facts of this case, it is clear that PennGear's action is so logically related to ACSA's action filed in the Western District, that separate trials would involve a substantial duplication of effort and time by the parties and courts. At the center of PennGear's action is a dispute over what contractual rights, if any, it possesses with regard to the specialized molds. In its lawsuit, ACSA seeks payment from PennGear for the goods manufactured from the very same molds. Essentially, ACSA has asserted a cause of action seeking payment from PennGear for the forgings which were produced by ACSA using the specialized molds, and PennGear has alleged a cause of action seeking possession of those same molds. Both actions arise out of the same contractual relationship and the claims are clearly offshoots of the same basic contractual dispute between the parties. Based upon these considerations, it is clear that separate trials of each of these actions would require a substantial

duplication of effort. Under Rule 13(a), PennGear's claims constitute compulsory counterclaims which must have been asserted in ACSA's Western District action. Therefore, PennGear's cause of action must be dismissed.

In the alternative to dismissal, PennGear's claims should be transferred to the Western District pursuant to the first-filed rule. Under the first-filed rule, in cases of federal concurrent jurisdiction involving the same parties and issues, the court to first obtain jurisdiction must proceed to adjudicate the claims. Crosley Corporation v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474 (3rd Cir. 1942). The United States District Court for the Western District of Pennsylvania obtained jurisdiction over this matter upon the filing of ACSA's complaint on or about August 16, 2001. PennGear's lawsuit was not commenced until approximately ten (10) months later, on or about June 2, 2002. Therefore, under the first-filed rule, PennGear's claims should be transferred to the Western District for consolidation or other appropriate disposition.

III.        CONCLUSION

PennGear's complaint must be dismissed under Rule 13(a) because the claims made by PennGear in this action constitute compulsory counterclaims, which are required to have been filed as part of ACSA's lawsuit filed against PennGear in the Western District of Pennsylvania. . In the alternative, PennGear's claims must be transferred, under the first-filed rule, to the United States District Court for the Western District of Pennsylvania for consolidation or other appropriate disposition.

       Respectfully submitted,

       ELDERKIN, MARTIN, KELLY & MESSINA


By_____
       Craig A. Markham, Esquire
       150 East Eighth Street
       Erie, Pennsylvania 16501
       (814) 456-4000

       CATALDE & BRADFORD
       Robert J. Catalde, Esquire
       731 French Street
       Erie, Pennsylvania 16501
       (814) 451-6236

       Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I certify that on the _____ day of September, 2002, I served a copy of the Memorandum in Support of the Motion to Dismiss on the following individuals and in the manner indicated below:

U.S. First Class Mail, Postage Prepaid:

Mohammad Ghiasuddin, Esquire
Kaplin, Stewart, Meloff, Reiter & Stein
350 Sentry Parkway
Building 640
P.O. Box 3037
Blue Bell, Pennsylvania  19422

Attorney for Plaintiff

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By_____
Craig A. Markham, Esquire
Attorney for Defendant
150 East Eighth Street
Erie, Pennsylvania 16501
(814) 456-4000